# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| **In re:** | **Chapter 7** <br> **Case No. 1:18-bk-13108** |
| **Steven Edward Schuholz,** | **Judge Beth A. Buchanan** |
| *Debtor.* | |
| **James T. Uren & Josephine Khoo-Smith, et al.** | **ADV. PRO. NO. 1:18-ap-01071** |
| **Plaintiffs** | |
| v. | |
| **Steven Edward Schuholz,** | |
| **Defendant-Debtor.** | |

## DEBTOR'S MOTION FOR JUDGMENT ON THE PLEADINGS

Debtor moves under Bankr. R. 7012 and Fed. R. Civ. P. 12(c) for judgment on the pleadings on all three counts in the complaint, which allege nondischargeability for (1) violation of Ohio securities laws under §523(a)(19), (2) fraud under §523(a)(2)(A), and (3) willful and malicious injury under §523(a)(6). The pleadings establish that non-party Glen Galemmo, not Debtor, violated securities laws, perpetrated the fraud, or willfully injured the plaintiffs. The Code sections cited by the plaintiffs do not give rise to

1

nondischargeability based on acts of someone other than the debtor. Debtor thus is entitled to judgment as a matter of law.

**I.      Judgment on the pleadings is appropriate where the pleadings show that the plaintiff can prove no set of facts that would entitle it to relief.**

A motion for judgment on the pleadings is similar to a motion to dismiss, except that where a motion to dismiss tests the factual sufficiency of the complaint, "Civ.R. 12(C) motions are specifically for resolving questions of law." *State ex rel. Midwest Pride IV, Inc. v. Pontious* (1996), 75 Ohio St.3d 565, 570, 664 N.E.2d 931. A motion for judgment on the pleadings should be granted where the plaintiff can prove no set of facts in support of the claims that would entitle it to relief. *See Roger Miller Music v. Sony/ATV Publishing*, 477 F. 3d 383, 389 (CA6 2007).

Exceptions to discharge are to be strictly construed against the creditor. *See Rembert v. AT&T Univ. Card Servs., Inc. (In re Rembert)*, 141 F.3d 277, 281 (6th Cir. 1998).

**II.     The pleadings include documents referenced in the complaint and documents attached to the answer.**

The Court must construe all allegations in the pleadings as true, and the "pleadings" include copies of all written instruments attached to the pleadings. *See* Bankr. R. 7010; Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). This includes attachments to the answer, which is a pleading under Fed. R. Civ. P. 7(a); "a defendant may introduce certain pertinent documents if the plaintiff fails to do so." *Weiner v. Klais and Co., Inc.*,

108 F. 3d 86, 89 (CA6 1997). "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which it relied." *Id.*

Where the allegations of a pleading are inconsistent with the text of a document incorporated into the pleadings, the document controls. For example, in *Thomas v. Publishers Clearing House*, 29 Fed. Appx. 319 (CA6 2002), the complaint alleged the existence and breach of a contract relating to an award of prize money. The plaintiff did not attach the alleged contract to the complaint, but the defendant supplied the document—and it disproved the complaint's allegations. More specifically, the document showed conclusively that it was "not . . . a valid contract; it is instead an offer to participate in the [Publisher's Clearinghouse] sweepstakes." *Id.* at 323. As a result, the plaintiff could not survive the defendant's Rule 12 motion. *Id. See also, e.g., Keenan v. Adecco Employment Servs., Inc.*, Ohio App. 3d Dist. no. 1-06-10, 2006-Ohio-3633, ¶8-13 (despite complaint's allegation that plaintiff was guaranteed a certain volume of business, dismissal was proper where attached contract documents expressly disclaimed volume guarantee; attachments "provide an insuperable bar to recovery").

**III.   The state court conducted a bench trial and issued findings of fact and conclusions of law, which were expressly incorporated into its judgment, and which are incorporated into the pleadings in this case.**

Here, the complaint referenced but did not attach several documents from the state-court action, and so Debtor attached those documents to his Answer. *See* Doc. 7 at

3

Exh. A-B. Happily, the complaint and the state-court documents largely agree on the facts; huge swaths of the complaint are taken verbatim (or nearly so) from the state-court's findings of fact and conclusions of law. But the state-court documents include a few small details that were omitted from the complaint—and which completely undermine the thesis of the complaint.

The complaint generally describes that Glen Galemmo, a disgraced former investment advisor who is not a party to this case, operated a Ponzi scheme for several years. *See* Complaint, Doc 1, at ¶9. After the scheme was uncovered (and after Galemmo was sentenced to more than 15 years in federal prison) the plaintiffs in this action filed a class-action complaint in the Hamilton County Common Pleas Court. *Id.* at ¶4. They sought to represent all Galemmo clients who lost money in the Ponzi scheme, and sought to recover funds from all the "net winners"—i.e., Galemmo's clients who received more in payouts than they had invested. Debtor was a net winner, and thus was a defendant in the state-court action. The plaintiffs and Debtor went to trial in 2016 and 2017, and the state-court issued what the plaintiffs describe as "exhaustive findings of fact and conclusions of law relating to the claims of the [plaintiffs] against [Debtor]." *Id.* at ¶5, 8. Those findings of fact and conclusions of law are attached to Debtor's Answer as Exhibit B.

Several months later, the state court issued its "final judgment entry," which is attached to Debtor's Answer as Exhibit A. The final judgment entry fully disposed of

4

claims against several parties to the state-court action; as to Debtor, the final judgment expressly "incorporated by reference" the state court's earlier findings of fact and conclusions of law. *See* Answer, Doc 7, at Exh A p. 3 (final unnumbered paragraph).

Debtor filed his chapter 7 petition after the state court entered its judgment. In this adversary proceeding, the plaintiffs seek a declaration that the debt is nondischargeable because it was incurred in violation of state or federal securities laws (count one), through false pretenses or fraud (count two), or through willful or malicious injury (count three).

But Debtor is entitled to judgment as a matter of law on all three counts, because whatever *Galemmo's* misdeeds, the state court's findings of fact and conclusions of law make clear that *Debtor* did not violate any securities laws, did not commit any fraud, and did not cause any willful or malicious injury. True, the state court concluded that Debtor was unjustly enriched, but the actions leading to the plaintiffs' loss were not Debtor's—they were Galemmo's. The Code does not prevent a debtor from obtaining a discharge based on the conduct of someone other than the debtor. The plaintiffs pleaded and attempted to prove that Debtor committed fraud or violated securities laws, but they failed to do so, and they are barred by res judicata from relitigating those issues.

**IV.** **The findings of fact and conclusions of law establish that the state court judgment is for unjust enrichment, and not for securities violations, fraud, or any other intentional tort.**

The complaint in this adversary proceeding tries to create the impression that Debtor was operating Galemmo's Ponzi scheme. Nothing could be further from the truth.

The state court's actual holding is found in its March 15, 2017 findings of fact and conclusions of law. *See* Answer, Doc 7, at Exh B. The most important part of the state court's findings of fact is in the first two paragraphs. There, the state court explained (1) that non-party "Glen Galemmo"—not Debtor—"operated a Ponzi scheme that began as early as 2008 and continued until approximately July 2013," and (2) that "the Ponzi scheme continued because of willful and criminal acts *by Galemmo*, including fraudulent misrepresentations, fraud while acting in a fiduciary capacity, and theft." *Id.* at ¶1-2 (emphasis added). At no point in its findings of fact and conclusions of law did the state court ever find or conclude that Debtor either started or continued the Ponzi scheme, that Debtor made any fraudulent misrepresentations, that Debtor committed any fraud while acting in a fiduciary capacity, or that Debtor committed theft.

This was not because the plaintiffs did not attempt to prove that Debtor was in on Galemmo's fraud, and not because they lacked any incentive to pursue that theory of the case. Indeed, the plaintiffs expressly raised a fraud claim against Debtor in the state-court action, and as court-appointed class representatives they had both the incentive

6

and the obligation to aggressively pursue a fraud claim against Debtor. But the state court specifically determined *only* that the fraud was perpetrated "by Galemmo"; it was asked to—but did not—determine that any fraud (or violation of securities laws, or other willful conduct) was perpetrated by Debtor. As to Debtor, the state court merely held that he had been unjustly enriched; it explained that "it would be unjust" and "it would be inequitable for [Debtor] to retain the funds transferred to him from the Galemmo Ponzi scheme . . . ." Answer, Doc 7, Exh B at Conclusion of Law 25-26.

V.  **The pleadings establish that Debtor is entitled to judgment as a matter of law on all three counts of the complaint.**

   1. **Debtor is entitled to judgment as a matter of law on count one because the state-court judgment against Debtor is not for a violation of securities laws.**

The complaint alleges, at ¶20, that the state court found violations of Ohio securities laws, and count one alleges that the plaintiffs' claim thus is nondischargeable under §523(a)(19). While it is true that the state court referred to violations of Ohio securities laws—see Answer, Doc 7, at Exh B ¶24—the state court did *not* find that *Debtor* violated Ohio securities laws, and even if had, that is not the same as the state-court judgment being "for" a violation of securities laws as §523(a)(19) requires. First, under Ohio law there is no civil liability for violations of Ohio securities laws and so the monetary judgment cannot be "for" a violation of those laws. Second, a securities violation by someone other than the debtor does not make a claim nondischargeable.

7

### a. There is no civil liability for violations of R.C. 1707.14 and 1707.44.

It is true that the state court's findings of fact and conclusions of law stated that Galemmo violated Ohio securities laws—specifically, R.C. 1707.14(A) and 1707.44(A)—by paying a referral fee to Debtor, who is not a registered securities dealer. But that is not the same as saying that the debt is "for" a violation of Ohio securities laws. Quite to the contrary, the debt cannot possibly be "for" a violation of Ohio securities laws, because section 1707.40 of the Ohio Revised Code expressly states that "sections 1707.01 to 1707.45 of the Revised Code create no new civil liabilities" for violations. Chapter 1707 does provide for the state's "director of commerce" to initiate enforcement actions and allows for restitution orders in such actions, and R.C. 1707.40 also clarifies that it does not supplant common-law claims between private parties such as fraud. But simply put, the statutes cited by the plaintiffs and the state court do not create any private cause of action on behalf of the plaintiffs (who, it need hardly be said, are not the director of commerce). As a matter of law, the state-court judgment in this case cannot be a judgment "for" securities violations.

Furthermore, while the state court found that the payments to Debtor were a violation of R.C. 1707.14 and 1707.44, the state court did *not* find that they were violations *by Debtor*. Unlike Galemmo—who is the only person whom the state court found to have committed "willful and criminal acts . . . including fraudulent misrepresentations, fraud while acting in a fiduciary capacity, and theft," *see* Answer,

Doc 7, at Exh B ¶2—Debtor has never been charged with a violation of securities laws. It is Galemmo, not Debtor, who is in federal prison after having been convicted of fraud in connection with the sale of securities.

> **b. A securities violation by someone other than the debtor does not make a claim nondischargeable.**

Even if Ohio law created civil liability for securities violations, the state-court judgment is not a judgment for securities violations. It is an unjust enrichment judgment based on a non-party's (i.e., Galemmo's) securities violations. On point is the Tenth Circuit's holding in *Oklahoma Department of Securities ex rel. Faught v. Wilcox*, 691 F.3d 1171, 1175 (CA10 2012). That court explained that a net-winner in a Ponzi scheme against whom a state court entered an unjust enrichment judgment is entitled to a discharge, even though the person running the Ponzi scheme violated securities laws.

The debtors in *Wilcox* were investors in a Ponzi scheme run by non-party Marsha Schubert. *Id.* at 1173. Schubert pleaded guilty to crimes related to the scheme. *Id.* The Oklahoma Department of Securities then sued over 150 net-winners of the Ponzi scheme on behalf of Schubert's victims. *Id.* The trial court entered an unjust enrichment judgment against the *Wilcox* debtors and required them "to repay profits of approximately half a million dollars each." *Id.* The Oklahoma appellate court affirmed. *Id.* The Oklahoma Supreme Court reversed and remanded for the trial court to consider whether the judgment against the debtors should be reduced on the ground that they were "innocent investors." *Id.* at n.3. The trial court determined that they were *not*

9

innocent investors in the Ponzi scheme. *Id.* The Oklahoma Supreme Court then affirmed that determination, as well as the order that the debtors repay their profits to the Ponzi scheme's victims. *Id.*

The debtors filed bankruptcy petitions, and the Department filed adversary proceedings seeking to prevent discharge of the debt. *Id.* at 1173. The bankruptcy court concluded that the debts were nondischargeable and the district court affirmed. *Id.*

But the Tenth Circuit reversed. In doing so, it rejected the plaintiffs' argument that "the state court judgment is 'for the violation' of securities laws because the disgorgement was a direct result of Schubert's violation of securities laws and because the Debtors materially aided in the violation." *Id.* at 1174. Instead, it explained that "The judgments at issue are not 'for a violation' of securities laws but for unjust enrichment resulting from someone else's violation of those statutes." *Id.* at 1175. It also emphasized that the debtors "were not charged with securities violations" at all. *Id.* Examining the text of the statute and its legislative history, the *Wilcox* court determined that "[i]t is evident . . . that Congress intended to penalize the *perpetrators* of [Ponzi] schemes by denying them relief from their debts," and did not intend to penalize anyone who had not been charged with a violation of securities laws. *Id.* at 1175-76 (emphasis in original).

The *Wilcox* court also rejected the plaintiff's argument that the debt was nondischargeable because the Oklahoma Supreme Court had determined that the

debtors were not "innocent investors"—in other words, that the debtors were complicit in the Ponzi scheme. It wrote that "the level of culpability of the debtors has no bearing" on the question of dischargeability under §523(a)(19), under which the only inquiry is whether the judgment is "for" violations of securities laws. *Id.* at 1174 n.5. Courts must "focus not on the underlying facts but on the nature of the judgments at issue." *Id.* The plaintiff in *Wilcox* "ma[de] much of [the debtors'] purported culpability with [the Ponzi] scheme," but the court recognized that the authorities "chose not to prosecute [the debtors] for securities violations," and concluded that as a result the unjust enrichment judgment was not "for" violations of securities laws. *Id.* This was so even though the court acknowledged that the purpose of the Bankruptcy Code is to protect the honest but unfortunate debtor. *Id.* at 1174.[1] Finally, the *Wilcox* court noted that the Ninth Circuit had recently reached a similar conclusion in favor of a debtor who "was not necessarily an 'innocent' in acquiring the funds he was ordered to disgorge, but [who] had not been accused of a securities violation." *Id.* at 1176, citing *Sherman v. SEC*, 658 F.3d 1009, 1010 (CA9 2011).

*Wilcox* is on all fours with this case. In both cases, the debtors were net winners in a non-party's Ponzi scheme. In both cases, the debtors were alleged to be "non-innocent" or complicit parties, but were never charged with violations of securities

---

[1] Debtor maintains, of course, that he is indeed an honest but unfortunate debtor. But to the extent that the plaintiffs attempt to paint him as anything else, that does not matter for the analysis of §523(a)(19), even when accepting the complaint's allegations as true.

11

laws. In both cases, the state courts entered unjust enrichment judgments ordering the debtors to disgorge the profits from the Ponzi scheme. And in both cases claimants sought a determination that the state-court judgment was nondischargeable under §523(a)(19).

The result must also be the same in both cases. Section 523(a)(19) does not give rise to nondischargeability for someone else's violations of securities laws. It was intended only to punish perpetrators of securities violations, and Debtor has never been charged with violating securities laws. Debtor is entitled to judgment as a matter of law on count one.

2. **Debtor is entitled to judgment as a matter of law on counts two and three because the alleged fraud and the alleged willful and malicious injury were committed by someone other than Debtor.**

The pleadings establish that any fraud or willful and malicious injury was caused by a non-party, and not by Debtor. The Code sections that the plaintiffs rely on do not give rise to nondischargeability for conduct by someone other than the Debtor.

   a. **Fraud must be by the debtor to make a debt nondischargeable under §523(a)(2)(A).**

"Courts addressing . . . liability under § 523(a)(2)(A) have uniformly refused to extend the provision's fraud exception to fraud committed by someone other than the debtor, except in the narrow circumstance of partnership/agency liability." *Porter Capital Corp. v. Campbell (In re Campbell)*, 2008 Bankr. LEXIS 4611, at *9 (E.D. Tenn. Bankr. Adv.

Proc. no. 08-5001, Oct. 21, 2008), citing *Hoffend v. Villa (In re Villa)*, 261 F.3d 1148 (11th Cir. 2001).

In *Campbell*, the plaintiff alleged that the debtor was liable for fraud committed by someone who was the debtor's co-shareholder, co-officer, co-director, and co-guarantor. *Campbell* at *4-5. In *Villa*, the plaintiff alleged that the debtor—the president and sole shareholder of an investment firm—was liable for the fraud committed by two employees of the investment firm. *Villa* at 1149. But the *Campbell* and *Villa* courts each found that the debtors were entitled to judgment as a matter of law. *Campbell* at *15, *17; *Villa* at 1151-1152. As the *Campbell* court said, the Sixth Circuit has construed the fraud exception to discharge to be "limited to fraud committed by a debtor personally, other than in the context of partnership liability recognized in *Ledford*." *Campbell* at 14, citing *BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556 (6th Cir. 1992). *See also Campbell* at *10-12 (discussing similar cases).

Inasmuch as the state court expressly found that *Galemmo* committed the fraud, found only that Debtor was unjustly enriched, and did not find that Galemmo and Debtor were partners, the debt is not nondischargeable under §523(a)(2)(A).

### b. Willful and malicious conduct must be by the debtor to make a debt nondischargeable under §523(a)(6).

Section 523(a)(6) makes a debt nondischargeable if it is a debt "for willful and malicious injury *by the debtor*." 11 USC 523(a)(6) (emphasis added). That phrase—"by the debtor"—means exactly what it says. Based on this express text, courts have held

13

"that 'action taken by someone other than the debtor' does not qualify" to make a debt nondischargeable under §523(a)(6). *Khanm Kim Luc v. Chien (In re Chien)*, 2008 Bankr. LEXIS 4347, at *23 (CA9 BAP no. NC-07-1268-JuMkK, Feb. 7, 2008), quoting *Kalmanson v. Adams (In re Nofziger)*, 361 B.R. 236, 243 (Bankr. M.D. Fla. 2006). This is true even if the debtor and the tortfeasor were partners, and even if the debtor and the tortfeasor were co-conspirators. *Id.*

Here, despite having a full and fair opportunity to litigate the claim that Debtor was complicit in Galemmo's Ponzi scheme, the plaintiffs failed to do so; the state court made no finding that Debtor was culpable, much less complicit or a co-conspirator or partner, and certainly made no finding that Debtor himself caused any willful or malicious injury. Because any willful or malicious injuries were caused by Galemmo's perpetration of his Ponzi scheme and not by Debtor, Debtor is entitled to judgment as a matter of law on count three.

## VI. Res judicata bars the plaintiffs from attempting now to prove that Debtor committed securities violations, fraud, or other willful or malicious injury.

Finally, res judicata bars the plaintiffs from attempting re-litigate the question of Debtor's role in Galemmo's scheme. Federal courts, including bankruptcy courts, give the same preclusive effect to state-court judgments as would the courts of the state that rendered those judgments. *See, e.g., Yust v. Henkel (In re Henkel)*, 490 B.R. 759, 770 (S.D. Ohio Bankr. 2013). Ohio law holds that "Issue preclusion . . . serves to prevent relitigation of any fact or point that was determined by a court of competent jurisdiction

in a previous action between the same parties or their privies." *O'Nesti v. DeBartolo Realty Corp*, 113 Ohio St.3d 59, 2007-Ohio-1102, ¶7. "Issue preclusion applies even if the causes of action differ." *Id.*

Ohio courts can and do grant judgment on the pleadings on the basis of res judicata where the relevant records from prior proceedings are attached to and incorporated into the pleadings in the subsequent case. For example, in *Hammerschmidt v. Wyant Woods Care Center* (9th Dist. no. 19779, Dec. 20, 2000) 2000 Ohio App. LEXIS 6166, at *1-2, an employee filed a claim for wrongful termination in violation of public policy. The employer asserted the defense of res judicata and attached to its answer the judgment entry in favor of the employer on the same employee's prior lawsuit on a *statutory* (as opposed to *public policy*) wrongful termination claim, and moved for judgment on the pleadings. *Id.* at *2, 3. The trial court granted the motion and the court of appeals affirmed. The appellate court explained its ruling by observing (based on the attachments to the answer) that "The underlying facts in this case are identical to those which led to the original filing," and that the new claim therefore must have been brought in the prior action. *Id.* at *4 "Thus," the appellate court wrote, "the trial court did not err in granting judgment on the pleadings as the claim was barred by *res judicata*." *Id.* at *5. (The *Hammerschmidt* court also noted that the trial court still had authority and jurisdiction to address whether the filing of claims which had already

15

been litigated and decided in prior litigation between the same parties constituted frivolous conduct under Ohio law. *Id.*)

Under Ohio law, the plaintiffs in this case are precluded from asserting claims for securities violations, fraud, and other intentional torts in this action. Those claims arise out of the same transaction or occurrence—the same "common nucleus of operative facts," *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 382—as the claims asserted in this case. The plaintiffs' failure to obtain a judgment against Debtor establishing securities violations, fraud, or other willful and malicious injury, precludes them from asserting one now.

Moreover, though it does not matter to res judicata analysis under Ohio law, the plaintiffs here *did* attempt to prove in the state-court action that Debtor was in on Galemmo's fraud, and even expressly raised a fraud claim against him. But they failed to meet their burden of proof, and the state court did not give them the judgment that they desired. Instead, the state court specifically determined *only* that the fraud was perpetrated "by Galemmo"; it was asked to—but did not—determine that any fraud (or violation of securities laws, or other willful conduct) was perpetrated by Debtor. As to Debtor, the state court merely held that he had been unjustly enriched; it explained that "it would be unjust" and "it would be inequitable for [Debtor] to retain the funds transferred to him from the Galemmo Ponzi scheme . . . ." Answer, Doc 7, Exh B at Conclusion of Law 25-26.

The plaintiffs may argue that Ohio law recognizes an exception to the application of issue preclusion, but it does not apply here. In *State v. Williams* (1996), 76 Ohio St.3d 290, 295, the Ohio Supreme Court held that issue preclusion would not apply if "[t]here is a clear and convincing need for a new determination of the issue because it was not sufficiently foreseeable at the time of the initial action that the issue would arise in the context of a subsequent action, or because the party sought to be precluded, as a result of the conduct of his adversary or other special circumstances, did not have an adequate opportunity or incentive to obtain a full and fair adjudication in the initial action." *Nye v. Ohio Board of Examiners of Architects*, Ohio App. 10th Dist. no. 05AP-833, 2006-Ohio-948, ¶20, quoting *Williams* (cleaned up).[2] It simply cannot be said that the plaintiffs lacked an adequate opportunity or incentive to obtain a full and fair adjudication of their claim against Debtor in the initial (state-court) action, or that it was not sufficiently foreseeable at the time of the state-court action that this issue would arise here in bankruptcy court. To the contrary, the plaintiffs were appointed as class representatives for the specific purpose of fully adjudicating the claims of Galemmo's victims against all net-winners, and the plaintiffs were (and are) represented by sophisticated and experienced counsel. They had every reason—as class representatives they had an *obligation*—to fully litigate whether Debtor was in on the fraud. They tried. They failed. They can't re-litigate it now.

---

[2] The plaintiff-appellant in *Nye* is no relation to Debtor's counsel of the same surname.

## VII. Conclusion

For the foregoing reasons, Debtor is entitled to judgment as a matter of law on all three counts of the complaint.

Respectfully submitted,

*/s/ Jeffrey M. Nye*
Paul T. Saba, Esq. (0063723)
Jeffrey M. Nye, Esq. (0082247)
STAGNARO, SABA & PATTERSON CO., L.P.A.
2623 Erie Avenue
Cincinnati, Ohio 45208
513.533.2703
513.533.2713 (facsimile)
paulsaba@sspfirm.com
jmn@sspfirm.com
**Attorneys for Debtor**

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on January 14, 2019 upon the U.S. Trustee and on all registered ECF Participants, electronically through the court's ECF System, at the email address registered with the Court.

*/s/ Jeffrey M. Nye*
Paul T. Saba, Esq. (0063723)
Jeffrey M. Nye, Esq. (0082247)